**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALTON D. BROWN, also known as POLITICAL PRISONER, | ) ) ) |
| | ) Civil Action No. 16-1680 |
| Plaintiff, | ) |
| | ) Judge Cathy Bissoon |
| v. | ) |
| | ) |
| WEXFORD HEALTH SOURCES, INC., et al, | ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

### I. MEMORANDUM

Pending before the Court are the following four Motions to Dismiss. For the reasons that follow, the DOC Defendants' Motion to Dismiss (Doc. 82) will be granted in part and denied in part; Corizon Health, Inc.'s, Dr. Blatt's, Dr. Stefanic's and P. Hallworth's Motion to Dismiss (Doc. 100) will be granted; the Medical Defendants' Motion to Dismiss (Doc. 104) will be granted in part and denied in part; and Dr. McDonald's Motion to Dismiss will be granted (Doc. 143).

### A.      PROCEDURAL HISTORY

The instant case was commenced in this Court on November 4, 2016, when Defendants, Correct Care Solutions LLC and Wexford Health Sources, Inc., removed the case from the Court of Common Pleas of Allegheny County, Pennsylvania. (Doc. 1). The genesis of the case, however, actually began six months earlier on May 17, 2016, when Plaintiff Alton D. Brown ("Plaintiff"), a Pennsylvania state prisoner currently confined at SCI-Fayette, initiated a separate civil rights lawsuit in this Court at Civil Action No. 16-0627, with the filing of a request to

proceed in forma pauperis accompanied by a complaint under 42 U.S.C. § 1983. ("Brown I").

Brown I was referred to United States Magistrate Judge Cynthia Reed Eddy for pretrial

proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(l)(A) and (B), and

Local Rule of Civil Procedure 72.

     In Brown I, Plaintiff alleged that, since medical officials diagnosed him with Hepatitis C

in 2000, Defendants have refused to provide appropriate medical care for his liver disease,

including providing an adequate diet, and have refused his requests for a new drug treatment,

which eliminates Interferon as part of the Hepatitis C treatment regimen. The Magistrate Judge

recommended that Plaintiff's request for in forma pauperis in Brown I be denied and the case

closed as Plaintiff had not shown that he was in imminent danger of serious physical injury.[1] On

August 18, 2016, three days after the report and recommendation was filed, Plaintiff filed a

nearly identical complaint to the complaint in Brown I in the Court of Common Pleas of

Allegheny County ("the state court case").[2]

     On October 14, 2016, this Court adopted the report and recommendation as the opinion

of the Court, and the case was dismissed without prejudice to Plaintiff reopening it by paying the

full statutory and administrative filing fees, totaling $400.00. (Brown I, Doc. 7). Thereafter,

---

[1] Federal courts, including this Court, have repeatedly denied Plaintiff's requests for in forma
pauperis status pursuant to 28 U.S.C. § 1915(g) as Plaintiff has had three prior qualifying
dismissals.

[2] The docket of the Court of Common Pleas reflects that the Complaint was filed on August 18,
2016. However, the Complaint is dated July 1, 2016, and it appears that Brown's original
attempt to file the complaint was rejected by the Allegheny County Department of Court
Records. See correspondence of August 5, 2016 from Brown to Kate Barkman, Director,
Department of Court Records. (Doc. 1-2, p. 21).

Plaintiff filed a Notice of Appeal of that Order to the United States Court of Appeals for the Third Circuit (Doc. 8), which was docketed at Court of Appeals No. 16-4136.

While the appeal in <u>Brown</u> I was pending, Defendants, Correct Care Solutions LLC and Wexford Health Sources, Inc., had the state court case removed to this Court. In response to motions to dismiss, Plaintiff filed an Amended Complaint on April 27, 2017 (Doc. 42), which remains his operative pleading. In the Amended Complaint, Plaintiff added approximately twenty-eight (28) additional defendants and eight new claims. The Amended Complaint is comprised of forty-one (41) handwritten pages, names a total of sixty-two (62) defendants, and alleges a variety of federal and state claims: violations of the Eighth Amendment right to medical care (Counts I – V), violation of First Amendment right of the petition clause (Count VI), violation of the Eighth Amendment right from excessive punishment (Count VII), violations of the Fourteenth Amendment right to access to the courts (Counts VIII and IX), medical malpractice, negligence, and vicarious liability (Counts X, XI, XII, XV, and XVII), breach of contract (Count XIII), intentional infliction of emotional distress (Count XIV), equitable estoppel (Count XVI), and assault and battery (Count XVIII).

On August 29, 2017, the court of appeals remanded <u>Brown</u> I to this Court and on September 1, 2017, <u>Brown</u> I and the instant case were consolidated under Civil Action No. 16-1680. (Doc. 66).

**B.**     **FACTUAL BACKGROUND**[3]

According to the Amended Complaint, in 2000, while confined at SCI-Pittsburgh, Plaintiff was informed by the medical staff that he tested positive for the Hepatitis C virus (also referred to as "Hepatitis C" or "HCV"). (Doc. 42, ¶ 80). He acknowledges that "from 2004 – 2009, [he] was repeatedly advised by Corizon staff that he needed treatment for his HCV," id. ¶¶ 80, 89, but that he refused any treatment until 2011 after experiencing "numerous HCV related symptoms and complications" over the years. Id. ¶ 90. Plaintiff claims new drugs to treat Hepatitis C came on the market in 2011, 2013, and 2014, and the Department of Corrections ("DOC") changed its protocol on Hepatitis C treatment in 2015. Id. ¶¶ 36-39, 46. Specifically, he alleges that "his requests for medical treatment for his HCV during the past 5/6 years while confined at SCI-Graterford, Smithfield, and Greene, have been completely ignored by Defendants. . . . ." Id. ¶ 90. Plaintiff contends that his requests for a new drug treatment, one which eliminates the use of Interferon, have been denied because of cost cutting measures. Id. ¶¶ 70-76, 89, 91, 146, 152, 153. He also alleges that due to cost cutting measures and retaliation, Defendants, inter alia, make partial diagnoses, do not follow physicians' orders, and deviate from standard treatment procedures. Id. ¶ 149. Along those same lines, Plaintiff contends that he has been denied meals catered to his special dietary needs and nutritional therapy for non-medical

---

[3] The following background facts are taken from Plaintiff's Amended Complaint (Doc. 42). Because the case is presently before the Court on Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the Amended Complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pleaded factual averments and reasonable inferences in the light most favorable to the non-moving party.

reasons. <u>Id</u>. ¶¶ 56 – 78. Plaintiff contends that he learned of Defendants' "illegal scheme" to provide sub-standard medical care due to Defendants' cost-saving and retaliation policies after reading articles published in the Prison Litigation News Magazine. <u>Id</u>. ¶ 152.

Plaintiff's multi-faceted Amended Complaint has, in turn, inspired multi-faceted Motions to Dismiss. Each of the Motions challenges Plaintiff's claims on a host of grounds. The Motions will be addressed seriatim.

## C.   <u>ANALYSIS</u>[4]

Before beginning its analysis, the Court notes that throughout the Amended Complaint, Plaintiff predominantly makes generalized references to "Defendants," without differentiating them. <u>See</u>, <u>e.g.</u>, ¶ 50 ("Defendants have denied numerous requests by Plaintiff for the appropriate and medical necessary DAAD[5] treatment for his HCV infections"); ¶ 98 ("The Defendants' has simply generally refused to provide the basic protections for plaintiff's infected liver . . ."); ¶ 105 ("Defendants' have also intentionally caused harm to Plaintiff over the years covering the period between 2011 to present . . ."); ¶ 149 ("Defendants' tactics employed against Plaintiff and others under their care in support of their cost-saving and retaliation policies and scheme include . . ."). In the few instances where Plaintiff does identify certain Defendants by name, he recites a long list of Defendants and then makes general, vague and conclusory

---

[4] In deciding whether to grant a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take as true all of the well-pleaded facts in the complaint, <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 201, 211 (3d Cir. 2009), and determine whether these facts raise a reasonable expectation that discovery will reveal the evidence necessary to prove each element of plaintiff's claims, <u>Thompson v. Real Estate Mortgage Network</u>, 748 F.3d 142, 147 (3d Cir. 2014).
[5] DAAD is an acronym for "direct-acting antiviral drugs." Doc. 42, ¶ 35.

allegations regarding their conduct as a whole. <u>See</u>, <u>e.g.</u>, ¶ 150 ("Plaintiff has been intentionally subject to the tactics mentioned in paragraph No. 149 by Defendants Jin, Mwaura, Dascani, Salamen, Mattes, Robinson, Gillman, Doll, Long, Price, Cutshall, Arias, Knauer, Stanikeski, McDonald, Blatt, Stefanic, Capone, Gonzalez, Park, Beabout, Lightburn, Zimmerly, DeFrangesco, Machak, Agra, Kaminsky, Kephart, Austin, Santos, Valley, Literatore, Hice, Noel, Oppman, Gordan, Silva, Alpert, Malhi, Vihlidal, Guth and Nicholson, on many occasions . . . ."). The Court, and counsel, have endeavored, where possible, to identify specific allegations against specific defendants. **Motion to Dismiss filed by the DOC Defendants.[6]**

The Motion filed by the DOC Defendants was filed on October 6, 2017. (Doc. 82). Plaintiff was granted an extension until December 15, 2017 to respond. (Doc. 115). Plaintiff has not responded to the Motion, and the time for responding has now passed. Therefore, in the absence of any timely response by Plaintiff, the Court will deem the Motion to Dismiss ripe for resolution. The issues raised by the DOC Defendants will be addressed seriatim.

---

[6] The DOC Defendants are identified as Governor Tom Wolf, DOC Secretary John Wetzel, former DOC Secretary Jeffrey Beard, Chief of Clinical Services Paul Noel, Deputy Secretary Christopher Oppman, Dietary Management Services Specialist Margaret Gordon, Director of Health Services Joseph Silva, SCI-Greene Food Services Manager Todd Funk, former Corrections Health Care Administrator (CHCA) Irma Vihlidal, former CHCA Julie Knauer, former CHCA Myron Stanishefski, SCI-Greene Medical Records Supervisor Kyle Guth, SCI-Greene CHCA William Nicholson, SCI-Smithfield CHCA William Dreibelbis, and SCI-Graterford CHCA Joseph Korszniak. The current employees are named in their official and individual capacities, while the former employees appear to be named in only their individual capacities.

a. *Lack of Personal Involvement with Respect to Defendants Wolf, Wetzel, and Beard / Deliberate Indifference Claims against Defendants Wolf, Wetzel, Beard, Gordon, Guth, Vihlidal and Knauer*

Distilled to its essence, the Amended Complaint alleges that Plaintiff has attempted to obtain medical treatment for Hepatitis C and that Defendants have systemically denied his requests based on non-medical reasons.

As to the claims against Governor Wolf, the Court finds that Plaintiff's contention of personal involvement is not "plausible on its face." See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). The Court finds it implausible, without more, that the Chief Executive of the Commonwealth would have known of or had personal involvement with Plaintiff or with his requests (or denials) for medical treatment. Accordingly, Plaintiff's Amended Complaint insofar as it alleges § 1983 liability against Governor Wolf will be dismissed.

Similarly, the Court does not find it plausible that either Beard or Wetzel, as the former and current Secretaries of the Department of Corrections, had personal involvement in any denial of medical care to Plaintiff.

However, the issue is not so clear with respect to Defendants Gordon, Guth, Vihlidal and Knauer. It is plausible that each of these defendants would play a role in the administration of medical and dietary services in the various facilities where Plaintiff was housed and that each would have some control over the extent to which those services were made available to Plaintiff.

For these reasons, the Court finds that Plaintiff has sufficiently alleged that he was subjected to certain constitutional deprivations and that Defendants Gordon, Guth, Vihlidal and

Knauer, acting in supervisory roles, knew of and acquiesced in these deprivations, and that the denials at issue amount to "policies" and "customs." See Rode, 845 F.2d at 1207. The Court finds that Plaintiff has pleaded sufficient facts to withstand the DOC Defendants' Motion to Dismiss as to his claims against Gordon, Guth, Vihlidal and Knauer.

b. *Claims Against The Bureau of Health Care Services Assistant Medical Director and The Bureau of Health Care Services Infection Control Coordinator*

The DOC Defendants contend these two unidentified defendants should be dismissed as nothing in the Amended Complaint indicates that these two individuals were involved in any alleged unconstitutional conduct. Rather, the only allegation against them is generally that they were members of the Hepatitis C Treatment Committee.

Defendants' request will be denied without prejudice. The Amended Complaint states that the members of the Hepatitis C Treatment Committee reviewed prisoners' clinical status and prioritization for treatment with DAAD medications. (Doc. 42 at ¶ 45(xvii)). Throughout the Amended Complaint, Plaintiff alleges that individual defendants knowingly acquiescence in the systemic denial of his medical care for cost-saving reasons. The Court finds that Plaintiff has pleaded sufficient facts to withstand the DOC Defendants' Motion to Dismiss. Through discovery, the identity of the individuals on the Hepatitis C Treatment Committee will be made known. ("According to the interim protocol, the HCV Treatment Committee consist of at least four people . . . ." Doc. 42 at ¶ 45(xvi)).

c. *Claims Against the "PA DOC Hepatitis C Treatment Committee"*

The DOC Defendants' request to have the "PA DOC Hepatitis C Treatment Committee" dismissed will be granted. To state a <u>prima</u> <u>facie</u> claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights secured by the United States Constitution and the laws of the United States and must show that the alleged deprivation was committed by a "person" acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42 (1988).

The "PA DOC Hepatitis C Treatment Committee" is not a "person" for purposes of a § 1983 claim. Therefore, Defendant "PA DOC Hepatitis C Treatment Committee" will be dismissed.

d. *Official Capacity Claims*

The DOC Defendants seek to have all claims against Defendants in their official capacities dismissed. In <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985), the Supreme Court of the United States discussed the differences between a suit against a public official in his personal capacity and in his official capacity. <u>See</u> <u>id</u>. at 166. The Court noted that personal capacity actions seek to impose liability on government officials for actions taken under color of state law, while official capacity actions represent another way to sue the municipality of which an officer is an agent. <u>See</u> <u>id</u>. Although an action brought against both the entity and the public official in his or her official capacity is redundant, the Court ultimately has discretion in deciding whether to dismiss the claims against the individual defendants. <u>See Satterfield v. Borough of Schuylkill Haven</u>, 12 F. Supp. 2d 423, 432 (E.D. Pa. 1998). Furthermore, a claim that is redundant is not necessarily invalid under Rule 12(b)(6). <u>See</u> <u>id</u>. Given the nature of Plaintiff's

claims and the early stage of this litigation, the Motion to Dismiss the claims against the DOC

Defendants in their official capacities will be denied without prejudice.

     e. *Deliberate Indifference to Plaintiff's Dietary Needs (Count II)*

At a minimum, "prison officials must ensure that inmates receive adequate food,

clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of

the inmates.'" <u>Farmer v. Brennan,</u> 511 U.S. 825, 832 (1994) (<u>quoting</u> <u>Hudson v. Palmer</u>, 468

U.S. 517, 526–27 (1984)).  Count II of the Amended Complaint alleges generally that

Defendants have been deliberately indifferent to Plaintiff's "dietary needs."  (Doc. 42 ¶177).

Plaintiff alleges that Defendants have refused to provide him with the "adequate and sanitary

diet" he requires as a result of his Hepatitis C diagnosis and that the diet he receives is "high in

fat content and short on protein."  (<u>Id</u>. ¶ 137).  Plaintiff alleges that this prolonged "deficient"

diet has had a deleterious impact on his health.

At this early stage of the litigation, and accepting Plaintiff's allegations as true, it cannot

be determined whether Defendants have deliberately disregarded an excessive risk to Plaintiff's

health or safety.  Therefore, the request to dismiss Count II will be denied.

     f. *State Tort Law Tort Claims (Counts XI, XII, XIII, XIV, XVII, and XVIII)*

The Pennsylvania General Assembly, after the judicial abolition of sovereign immunity

by the Pennsylvania Supreme Court in <u>Mayle v. Pa. Dep't of Highways</u>, 388 A.2d 709 (Pa.

1978), reaffirmed by statute the concept of immunity for the Commonwealth and its employees.

The statute reads:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is
> hereby declared to be the intent of the General Assembly that the Commonwealth,
> <u>and its officials and employees acting within the scope of their duties</u>, shall
> continue to enjoy sovereign immunity and official immunity and remain immune

from suit except as the General Assembly shall specifically waive the immunity.
When the General Assembly specifically waives sovereign immunity, a claim
against the Commonwealth and its officials and employees shall be brought only
in such manner and in such courts and in such cases as directed by the provisions
of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to
procurement) unless otherwise specifically authorized by statute.

1 Pa. Cons. Stat. Ann. § 2310 (emphasis added).

According to the clear language of the statute, not only the Commonwealth, but also its employees and officials are entitled to immunity. "In other words, if the Commonwealth is entitled to sovereign immunity . . . , then its officials and employees acting within the scope of their duties are likewise immune." Moore v. Commonwealth, 538 A.2d 111, 115 (Pa. Commw. Ct. 1988).

The Pennsylvania General Assembly has provided nine specific exceptions to the general grant of immunity: (1) the operation of a motor vehicle in the control or possession of a Commonwealth party; (2) health care employees; (3) care, custody or control of personal property; (4) Commonwealth-owned property; (5) potholes or other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  See 42 Pa. Cons. Stat. Ann § 8522.

The proper test to determine if a Commonwealth employee is protected from liability pursuant to 1 Pa. Cons. Stat. Ann. § 2310 and 42 Pa. Cons. Stat. Ann. § 8522 is to consider whether the Commonwealth employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the nine exceptions to sovereign immunity. See La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Commw. 1992).

Here, the DOC Defendants are current or former employees of the Department of Corrections, a state agency, and, at all relevant times, were acting within the scope of their duties as DOC employees.  Moreover, none of the allegations described in the Amended Complaint place the DOC Defendants' actions within any of the nine exceptions to state sovereign immunity.   Accordingly, Plaintiff's state law claims against the DOC Defendants – Counts XI, XII, XIII, XIV, XVII, and XVIII – are barred by Pennsylvania law.

Further, any medical malpractice claims asserted against the non-medical DOC Defendants, i.e., Wolf, Wetzel, Beard, Gordon and Funk, are barred because to establish professional negligence, the defendant must be a healthcare provider.  McCool v. Dept. of Corrections, 984 A.2d 565, 570 (Pa. Commw. Ct. 2009).  As these individuals are not licensed healthcare providers, any professional negligence claims against Wolf, Wetzel, Beard, Gordon and Funk will be dismissed.

g.  *Retaliation Claims (Count VI)*

The DOC Defendants argue that Plaintiff's "unsubstantiated, conclusory statements" that he was denied treatment in retaliation for filing complaints against them fails to state a claim." (Doc. 83, p. 17).

It is well settled that "government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Allah v. Seiverling, 229 F.3d 220, 224–25 (3d Cir. 2000)).  To state a prima facie case of retaliation, a prisoner / plaintiff  must demonstrate:  (1) that the conduct in which he engaged was constitutionally protected, (2) he suffered an "adverse action" at the hands of prison officials; and (3) a causal link between the exercise of his constitutional rights and the

12

adverse action taken against him.  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)); see also, 375 F. App'x 232, 236 (3d Cir. 2010); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Although there is not a heightened pleading standard in civil rights cases and liberal standards are to be applied to pro se pleadings, a § 1983 complaint still must comply with the Federal Rules of Civil Procedure, and must contain at least a modicum of factual specificity, identifying the particular conduct of each defendant that is alleged to have harmed plaintiff, so that a defendant has adequate notice to frame an answer.

In the instant case, Plaintiff's retaliation allegations are stated in wholly conclusory terms. He attempts to cast a wide net, making a bald assertion of retaliation -- in essence claiming that every action taken by every Defendant was done in retaliation for Plaintiff engaging in constitutionally protected activity.  These threadbare, conclusory allegations are insufficient to state a claim for First Amendment retaliation.  Under these circumstances, Plaintiff's retaliation claim will be dismissed.

> h.  *Access to Court Claims  (Counts VIII and IX)*

In Counts VIII and IX of the Amended Complaint, Plaintiff appears to be alleging that Defendants have violated his right of access to the courts by denying him access to information "necessary to have a reasonable suspicion that he was a victim of a scheme to defraud." (Doc. 42, ¶¶ 190, 192).  The DOC Defendants argue that Plaintiff's claims fail to state a viable claim as he has failed to state what information he has sought or what has been withheld from him.  (Doc. 83, pps. 18 - 20).  Plaintiff did not respond to the DOC Defendants' Motion; however, in his response to the Medical Defendants' Motion, he argues that "the Defendants obviously took

13

steps to prevent Plaintiff from [discovering] their money-making schemes and tactics . . . and did so, at least in part, to prevent their victims from seeking relief / redress from same." (Doc. 135, pps. 24-25).

The focus of any right of access analysis is whether the defendant's actions denied the plaintiff adequate, effective, and meaningful access to the courts. The Court of Appeals for the Third Circuit has explained:

> [A] denial of access claim is available where the state officials "wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled.

Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety - Div. of State Police, 411 F.3d 427, 445 (3d Cir. 2005) (emphasis in original) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 511 (3d Cir. 2003)), overruled on other grounds by Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010). See also Burkett v. Newman, No. 3:11-cv-00037, 2012 WL 1038914, at *3 (W.D.Pa. Feb. 21, 2012). Importantly, a plaintiff must demonstrate actual injury stemming from the denial of access. Lewis v. Casey, 518 U.S. 343 (1996). A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002).

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). In order for Plaintiff to support his access to courts claim, he is required to demonstrate that he has lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim, that no other remedy is available to him, and that the Defendants had the requisite intent to deny his constitutional right of access to courts.

Here, Plaintiff alleges generally that the Defendants concealed crucial information with the intent to frustrate his attempts to seek relief from court.

The Amended Complaint contains no allegations that show actual injury or that Plaintiff lost an arguable claim as a result of any actions by any of the Defendants. In fact, Plaintiff's arguments are undercut by the fact that he has filed the present civil action with respect to the very issues he claims he lacked necessary information. Thus, the Court finds that Plaintiff is unable to show that any action on the part of the DOC Defendants denied him the right "to pursue a 'nonfrivolous' or 'arguable' underlying claim," as is required to establish an access to courts claim. For these reasons, the DOC Defendants' Motion to Dismiss Counts VIII and IX will be granted.

### 1. Motion to Dismiss filed by the Corizon Defendants

Defendants Corizon Health, Inc., W. Myers, Dr. Blatt, Dr. Stefanic, P. Hallworth and Dr. McDonald ("Corizon Defendants") have also moved to dismiss Plaintiff's Amended Complaint (Docs. 101 & 143). Plaintiff identifies Messrs. Hallworth and Myers as executive officers with Corizon (Doc.1-2, ¶ 7); Drs. Blatt and Stefanic are identified as medical directors at the state correctional facilities where Plaintiff was housed (Doc. 42, ¶ 14); and Dr. McDonald is identified as being a physician employed by Corizon. According to the Amended Complaint, Defendants Hallworth, Myers, Blatt, and Stefanic were on the Hepatitis C committee with several other individuals to set treatment for inmates with Hepatitis C, id. ¶ 68, and Dr. McDonald is listed among several other individuals as ignoring Plaintiff's requests for treatment. (Id. ¶ 91).

The Corizon Defendants argue, inter alia, that all claims against them are barred by the applicable two-year statute of limitations. Corizon contracted with DOC to provide medical care

to DOC prisoners from January 2006 through January 2013. (Doc. 101). Dr. McDonald has not worked for Corizon since June 2012. (Doc. 144, p.4). Plaintiff did not file the Complaint in this lawsuit until 2016.[7]

Plaintiff responds that he only discovered Corizon's "refusal to provide treatment (medical) for HCV virus during 2011-2013 (when they were under contract)" was a result of cost-saving and/or retaliation schemes when he read an article printed in the Prison Legal News. (Doc. 166, p. 4). He does not indicate, however, when he first read the article. Additionally, according to Plaintiff, "[a]fter reading the Prison Legal News article, it still took Plaintiff quite some time to locate information that enlighten him about the realities with HMO's (Health Maintenance Organizations) in prison settings." Id.

The statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) Motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)) (internal quotation marks omitted). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id. (internal quotation marks and citation omitted).

Under § 1983, federal courts apply the statute of limitations governing personal injury actions in the state where the cause of action arose. Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003). In Pennsylvania, the statute of limitations for personal injury claims is two years. Id. (citing 42 Pa. Cons. Stat. Ann. § 5524). "Under federal law, a cause of action

---

[7] The complaint filed in Brown I was filed on May 17, 2016 (but signed and dated by Plaintiff on April 18, 2016) and the state court complaint was filed on August 18, 2016 (but signed and dated by Plaintiff on July 1, 2016).

accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (quoting Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)). "The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known." Id. (citing Barren v. United States, 839 F.2d 987, 990 (3d Cir. 1988)).

Plaintiff recognizes that his claims against the Corizon Defendants accrued over two years before he filed the instant suit, but he argues that two exceptions toll the two-year statute of limitations, namely the continuing violations doctrine and the doctrine of fraudulent concealment. The Court finds Plaintiff's arguments to be without merit.

Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (internal quotation marks and citation omitted). The Amended Complaint contains no claims of conduct by any of the Corizon Defendants that falls within the limitations period. In fact, there cannot be any such claims as Corizon's role with DOC ended by January 2013.

Plaintiff's attempt to rely on the doctrine of "fraudulent concealment" fares no better. The doctrine of fraudulent concealment tolls the statute of limitations where "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991) (quoting Ciccarelli v. Carey Can. Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985)); see also Fine v. Checcio, 870 A.2d 850, 860 (Pa. 2005) (citing Deemer v. Weaver, 187 A. 215, 215 (Pa. 1936)) ("The doctrine does not require

fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception.").

The doctrine of fraudulent concealment requires an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury. <u>Bohus</u>, 950 F.2d at 925 (<u>citing</u> <u>Gee v. CBS, Inc.</u>, 471 F. Supp. 600, 623 (E.D. Pa. 1979)). The Amended Complaint is void of any allegations to support such a theory.

As there is no basis to toll or extend the statute of limitations, the Court finds that Plaintiff's federal claims against the Corizon Defendants are barred by the statute of limitations.[8] Plaintiff's remaining claims against the Corizon Defendants allege state law claims. A district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367. However, the Court of Appeals for the Third Circuit has recognized, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (<u>quoting</u> <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)) (emphasis in original). Here, all of Plaintiff's federal claims against the Corizon Defendants -- that is, all of the claims over which the district court had original jurisdiction -- will have been dismissed. Considerations of judicial economy, convenience and fairness do not provide an affirmative justification for maintaining Plaintiff's state law claims against the Corizon Defendants. <u>Shaffer v. Bd. of Sch. Dir. of Albert Gallatin Area S.D.</u>, 730 F.2d 910,

_____

[8] Because the Court finds that Plaintiff's claims are barred by the statute of limitations, there is no need for the Court to analyze the Corizon Defendants' alternative arguments for dismissal of the claims against them.

912–13 (3d Cir. 1984) (noting that "time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction" and that "decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law"). As such, the Court will dismiss these state law claims without prejudice for want of jurisdiction. See Burnsworth v. PC Lab., 364 F. App'x 772, 776 (3d Cir. 2010) (affirming a district court's decision to decline supplemental jurisdiction over state law claims when the federal claims had been dismissed).

### 2. The Motion to Dismiss filed by the Medical Defendants[9]

The Medical Defendants moved to dismiss on November 6, 2017 (Doc. 104), and Plaintiff responded in opposition on January 5, 2018. (Doc. 135). The Motion is ripe for resolution.

The Medical Defendants' first argument is similar to that made by the Corizon Defendants, namely that all claims against them are barred by the two-year statute of limitations. The Medical Defendants, however, are in a much different posture than the Corizon Defendants. Plaintiff contends that the Medical Defendants have been responsible for his healthcare since the expiration of Corizon's contract. (Doc. 135, p. 2). Specifically, he states that Wexford Health had a contract with DOC from January 1, 2013, until September 1, 2014, (contract # 44000010454) and that Correct Care Solutions took over after the expiration of the Wexford

---

[9] Defendants Wexford Health Sources, Inc.; Correct Care Solutions, LLC; Byunghak Jin, Elon Mwaura, Paul Dascani, Jawad A. Salamen, Esther L. Mattes, John N. Robinson, Tyson D. Gillmen, Christina B. Doll, Ronald A. Long, Deb Cutshall, Dr. Felipe Arias, V. Capone, Min H. Park (identified as "Doctor Park"), Susan Lighbourn, Jack Zimmerly, J. Defrangesco, Ray Machak, C. Agra, Stephen Kaminsky, C. Kephart, Rob Price, Natalie Austin, Stacey Liberatore, Mike Hice, Nicholas Schariff, Andrew Dancha, Thomas Lehman, Doctor Alpert and C. Keldie comprise the "Medical Defendants."

Health contract.  Id.[10]  Based on this scenario, it appears that the continuing violations theory

provides an exception to the two-year statute of limitations for claims against Wexford Health

and its employees. As to the claims against Correct Care Solutions and its employees, those

claims appear to be timely filed.

The Court will now address the Medical Defendants' remaining arguments seriatim.

a.  *Lack of Personal Involvement*  (*Counts I, III, IV, and V*)

The Medical Defendants argue that the Amended Complaint should be dismissed for

failure to allege personal involvement.  Specifically, the Medical Defendants argue that the

claims of the Amended Complaint contain generalized references and fails to show that any of

the Medical Defendants "actually participated in Plaintiff's medical care or that they had the

requisite subjective state of mind for liability." (Doc. 105, p. 7).  Plaintiff responds that he is

making "collective" claims because "he was/is collectively attacked pursuant to the high (sic)

Defendant's policies, practices, and /or procedures." (Doc. 135, p.10).

Although, at first blush, a review of the Amended Complaint appears to confirm a lack of

personal involvement on the part of certain Medical Defendants, a closer read reveals that

Plaintiff's core allegation is that the Medical Defendants instituted cost-saving policies and

practices regarding the delay or denial of requests for medical treatment and that the individual

defendants knowingly acquiescence in the systemic denial of medical care for cost-saving

reasons.  Without evaluating the underlying merits of the claim, but noting the deference

traditionally afforded to pro se plaintiffs, the Court finds that Plaintiff has pleaded sufficient facts

---

[10] It is not clear from the limited record before Court when Wexford Health and its employees actually ceased responsibility for healthcare to the DOC prisoners.   Plaintiff states that "CCS and its employees didn't begin their contract duties until sometime in 2015, when they took over after the expiration of WHS contract."  (Doc. 135 at 2, Doc. 42 at ¶ 158).

to withstand the Medical Defendants' Motion to Dismiss on his claims of deliberate indifference to his serious medical needs.

    b. *Retaliation Claim (Count VI)*

The same analysis applies to the retaliation claims against the Medical Defendants as that applied to the retaliation claims against the DOC Defendants. See supra. Therefore, the retaliation claims of Count VI of the Amended Complaint will be dismissed against the Medical Defendants.

    c. *Deprivation of 14th Amendment Right of Access to the Courts (Counts VIII and IX)*

Similarly, the same analysis applies to the access to courts claims against the Medical Defendants as that applied to the access to court claims against the DOC Defendants. See supra. Therefore, the claims in Counts VIII and IX of the Amended Complaint will be dismissed against the Medical Defendants.

    d. *Professional Negligence Claims (Counts X, XI, XII, XV, and XVII)*

Pennsylvania law requires that a certificate of merit accompany a claim for professional liability brought against designated licensed professionals, including health care providers. See Pa R. Civ. P. 1042.3 and 1042.1(b). The United States Court of Appeals for the Third Circuit has held that Rule 1042.3 is substantive law under the Erie doctrine and must be applied as such by federal courts. Liggon-Redding v. Estate of Sugarman, 659 F.3d 258 (3d Cir. 2011). Additionally, "one of Pennsylvania's conditions precedent to dismissing an action for failure to comply with the [certificate of merit] requirement, fair notice to a plaintiff, is also substantive law," Schmigel v. Uchal, 800 F.3d 113, 115 (3d Cir. 2015), and, therefore, also must be applied in federal court. Id. at 124. This requirement of state law applies with equal force to counseled

complaints, and to <u>pro se</u> medical malpractice actions brought under state law.  <u>See</u> <u>Leaphart v.</u> <u>Prison Health Services</u>, No. 3:10-cv-1019, 2010 WL 5391315 (M.D. Pa. Nov. 22, 2010).

Rule 1042.3 specifically states that a plaintiff <u>shall</u> file with the complaint or within sixty days after the filing of the complaint a certificate of merit.  The Medical Defendants argue that all of Plaintiff's professional negligence claims against them should be dismissed because Plaintiff has failed to file the requisite certificate of merit.  In response, Plaintiff contends that this claim is "clearly frivolous" because the Medical Defendants have failed to provide him with notice as required under Rule 1042.7.

Plaintiff's position is belied by the record.  The docket reflects that on March 9, 2017, the Medical Defendants filed a Notice of Intention to Enter Judgment for Failure to File a Certificate of Merit. (Doc. 25).[11]  The certificate of service reflects that Plaintiff was served with the notice by first class, United States mail, postage pre-paid.  And, in fact, on March 31, 2017, in response to the Medical Defendants' notice, Plaintiff requested an extension of time in which to file his certificate of merit (Doc. 34),[12] which request was denied by the Magistrate Judge on April 6, 2018. (Doc. 38).

Accordingly, the Court finds that the record reflects that Plaintiff was given notice in March of 2017 that the Medical Defendants were seeking to have his professional negligence claims dismissed for failing to file a certificate of merit.  The filing of the Amended Complaint,

---

[11]  Similarly, the Corizon Defendants filed a notice of intention to take judgment for failure to file a certificate of merit on November 1, 2017. (Doc. 99).

[12]  In his request for an extension, Plaintiff stated that the filing of an Amended Complaint would make the need for filing a certificate of merit "obsolete."  However,  the Amended Complaint contains a number of professional negligence claims; therefore, the need for Plaintiff to file a certificate of merit was not eliminated.

which again included multiple professional negligence claims, did not relieve Plaintiff of his obligation to file a certificate of merit. The Amended Complaint was filed in April of 2017. The instant Motion to Dismiss was filed on November 6, 2017. Plaintiff did not obtain the required certificate even after the filing of the instant Motion to Dismiss, which again gave him notice that one was needed. It is undisputed that Plaintiff has not submitted a certificate of merit as required by Rule 1042.3. Thus, the Medical Defendants are entitled to have Plaintiff's professional negligence claims against them dismissed.

     e.   *Claim against Wexford Health and Correct Care Solutions for Vicarious Liability (Count X)*

The Medical Defendants also argue that to the extent Plaintiff is alleging that an unconstitutional policy or custom attributable to Wexford Health or Correct Care Solutions resulted in a constitutional injury, such a claim fails as the Amended Complaint does not sufficiently allege that they knew that they had a policy or practice that was deliberately indifferent to Plaintiff's constitutional rights. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 663 (1978). A private corporation may be held liable for § 1983 constitutional violations if while acting under color of state law, the corporation knew of and acquiesced in the deprivation of a plaintiff's rights. <u>Id</u>. at 694-95 (1978). To establish liability regarding a private corporation, the plaintiff must show that the corporation, with "deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm." <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 725 (3d Cir. 1989), <u>cert</u>. <u>denied</u>, 493 U.S. 1044 (1990).

Here, the Medical Defendants claim they are unable to discern any policy Plaintiff is challenging. The Medical Defendants argue that Plaintiff has not sufficiently pleaded the

existence of a practice or policy that the Medical Defendants knew constituted a substantial risk of harm to Plaintiff. The Court disagrees with this argument.

Plaintiff's Amended Complaint quite clearly alleges that the Medical Defendants have a policy of saving money by ignoring the serious medical needs of prisoners, and alleges that this policy has been applied to him through their failure to treat his Hepatitis C and related illnesses. Plaintiff's Amended Complaint states that as a result of the cost-saving policy, he is forced to endure the effects of non-treatment: pain that serves no penological purpose and his health continues to decline. Policies that subject prisoners to pain that serve no penological purpose are unconstitutional. See Estelle, 429 U.S. at 103. By alleging that treatment was deliberately denied or delayed in violation of his Eighth Amendment right to be free from cruel and unusual punishment as part of the Medical Defendants' cost-saving policy, Plaintiff has sufficiently pleaded the existence of an unconstitutional policy carried out by an entity acting under color of state law. Therefore, Plaintiff has sufficiently pleaded a cognizable § 1983 claim, and the Medical Defendants' request to have the claims raised in Counts X against Wexford Health and Correct Care Solutions be dismissed pursuant to Fed.R.Civ.Proc. 12(b)(6) will be denied.

f. *Breach of Contract (Count XIII)*

In Count XIII of the Amended Complaint, Plaintiff alleges that the Medical Defendants breached their contractual agreement with the Commonwealth by failing to provide adequate medical care and that he is a third-party beneficiary of the contract. The Medical Defendants argue that Plaintiff's allegations cannot support such a breach of contract claim.

In Pennsylvania, third party beneficiary law is summarized as follows: a party becomes a third party beneficiary only where both contracting parties have expressed an intention to benefit the party in the contract itself. See Scarpitti v. Weborg, 609 A.2d 147, 149 (Pa. 1992) (citing Spires

v Hanover Fire Ins. Co., 70 A.2d 828 (Pa. 1950)).  However, in Guy v. Liederbach, 459 A.2d
744 (Pa. 1983), the Pennsylvania Supreme Court carved out an exception stating that if the
circumstances are so compelling that recognition of the beneficiary's right is appropriate to
effectuate the intention of the parties, and the performance satisfies an obligation of the promisee
to pay money to the beneficiary or the circumstances indicate that the promisee intends to give
the beneficiary the benefit of the promised performance.  See also Perlman v. Universal
Restoration Sys., Inc., No. 09-4215, 2013 WL 5278211, at *8 n.11 (E.D. Pa. Sept. 19, 2013).
The standing requirement "leaves discretion with the trial court to determine if recognition of the
third party beneficiary status would be 'appropriate'."  Guy, 459 A.2d at 751.

In response to Defendants' Motion, Plaintiff states he has pleaded sufficient facts in
support of his third party contractual claims.  (Doc. 135, p. 8).  However, other courts in this
Circuit have found that plaintiffs lack standing to sue for the type of violation Plaintiff here
claims; "this is so even if Plaintiff deems or designates himself as a third-party beneficiary of
[the] contract." Parker v. Gateway Nu-Way Found., No. 10-2070, 2010 WL 4366144, at *4
(D.N.J. Oct. 26, 2010).  See also Zeigler v. Correct Care Systems, No. CV 1:16-CV-1895, 2018
WL 1470786, at *4 (M.D. Pa. March 26, 2018); Robinson v. Corizon Health, Inc., No. CV 10-
7165, 2016 WL 1274045, at *9 (E.D. Pa. March 30, 2016) (citing cases).  Plaintiff has not
sufficiently alleged that there was an express contractual intent to make him a third-party
beneficiary of the relevant contract. Nor do Plaintiff's allegations support a finding that he has
sufficiently alleged compelling circumstances to warrant a finding that he has third-party
beneficiary standing.  Ultimately, Plaintiff's conclusory allegation that he was "a third party
beneficiary" is not enough to support his claim. Thus, Plaintiff's breach of contract claim (Count
XIII) will be dismissed.

g. *Intentional Infliction of Emotional Distress (Count XIV) and Assault and Battery (Count XVIII)*

The Medical Defendants argue that these claims should dismissed because the statute of limitations for actions lying in tort is two years and the statute tolled in either 2013 or 2014. However, the Court's analysis which was applied to Plaintiff's federal claims, equally applies to his state tort claims. Therefore, the Medical Defendants' Motion to Dismiss Plaintiff's intentional infliction of emotional distress and assault and battery claims will be dismissed.

h. *Equitable Estoppel (Count XVI)*

The Medical Defendants argue that this claim should be dismissed as Plaintiff "is asserting the doctrine of estoppel on behalf of Defendants, which is wholly improper." (Doc. 105 at 18). Plaintiff responds that "[t]he Amended Complaint is simply full[] of allegations to satisfy Defendants' concerns regarding Plaintiff's "equitable estoppel" claim. (Doc. 135, p. 25). The Court finds that Plaintiff's argument can be rejected rather summarily.

Equitable estoppel "is not an independent cause of action but one 'raised either as an affirmative defense or as grounds to prevent the defendant from raising a particular defense.' " Retail Brand Alliance, Inc. v. Rockvale Outlet Center, LP, No. 06-01857, 2007 WL 966509, at *3 (E.D.Pa. March 28, 2007) (quoting Carlson v. Arnot-Ogden Memorial Hosp., 918 F.2d 411, 416 (3d Cir. 1990) (citation omitted)); see also Bair v. Purcell, No. 1:04-CV1357, 2007 WL 2219306, at *17 (M.D.Pa. Aug. 2, 2007) (providing that "equitable estoppel is raised as an affirmative defense or as grounds to prevent a defendant from raising a particular defense, it cannot be pleaded as a separate cause of action"). Plaintiff seeks to invoke equitable estoppel stating "he was subjected to Defendant's intentional misrepresentations regarding their intent to

comply with the terms of their contract. . . ." (Doc. 135, p. 25). The Court's ruling on Plaintiff's third-party beneficiary claim renders his equitable estoppel claim unsustainable. Therefore, the Medical Defendants' request will be granted and Count XVI will be dismissed.

### 4. Leave to Amend

The Court must allow amendment by the plaintiff in a civil rights case brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." <u>Fletcher–Harlee Corp. v. Pote Concrete Contractors,</u> Inc., 482 F.3d 247, 251 (3d Cir. 2007); <u>see also</u> <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). The undersigned is cognizant of these holdings, but finds that allowing for amendment by Plaintiff would be futile.

Defendants' Motions to Dismiss the Amended Complaint placed Plaintiff on notice of the deficiencies in the Amended Complaint. Further amendment would be futile because Plaintiff has had the opportunity to revise his claims to add any missing factual averments, but has elected not to do so.

## II.    ORDER

For the reasons set forth above, the Motion to Dismiss filed by the DOC Defendants (**Doc. 82**) will be **GRANTED** in part and **DENIED** in part. Specifically, the Motion will be granted (i) as to all claims against Defendants Wolf, Beard, and Wetzel; (ii) all claims against the Hepatitis C Treatment Committee; (iii) all state law tort claims (Counts X – XVIII, inclusive); (iv) all retaliation claims (Count VI); and (v) all claims alleging denial of access to courts (Counts VIII and IX). The Motion will be denied as to (i) any supervisory claims against

Defendants Gordon, Guth, Vihlidal and Knauer; (ii) any claims against The Bureau of Health Care Services Assistant Medical Director and the Bureau of Health Care Services Infection Control Coordinator; (iii) all official capacity claims; and (iv) all Eighth Amendment claims pertaining to Plaintiff's alleged deficient diet (Count II). Any additional Eighth Amendment claims alleging the DOC Defendants are deliberately indifferent to Plaintiff's serious medical needs will also proceed (Counts I, III, IV, and V).

The Motions to Dismiss filed by the Corizon Defendants (**Docs. 100 and 143**) will be **GRANTED** in their entirety as any claims against the Corizon Defendants are barred by the applicable two-year statute of limitations.

The Motion to Dismiss filed by the Medical Defendants (**Doc. 104**) will be **GRANTED** in part and **DENIED** in part. Specifically, the Motion will be granted as to (i) all state court tort claims; (ii) all retaliation claims (Count VI; (iii) all access to court claims (Counts VIII and IX); (iv) all professional negligence claims (Counts X, XI, XVII); (v) the negligence claims (Counts XII and XV); (vi) the breach of contract claim (Count XIII); and (vii) the equitable estoppel claim (Count XVI). The Motion is denied as to (i) all deliberate indifference to serious medical needs (Counts I, II, III, IV, and V); (ii) the <u>Monel</u> claim alleged against Wexford Health and Correct Care Solutions (Count X); and (iii) the intentional infliction of emotional distress and assault and battery claims (Counts XIV and XVIII).


IT IS SO ORDERED.


June 28, 2018                                    /s Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States District Judge

cc:    Alton D. Brown
       (via U.S. First Class Mail)

       All Counsel of Record
       (via ECF email notification)